UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| In re: | ) | Case No. 05-90907 |
| --- | --- | --- |
| LAWRENCE J. PAESANO, | ) | Chapter 7 |
|    Debtor. | ) | |
| | ) | |
| CITIBANK | ) | Adversary Proceeding No. 06-1151 |
| (SOUTH DAKOTA) N.A., | ) | |
|    Plaintiff, | ) | Judge Arthur I. Harris |
| | ) | |
| v. | ) | |
| | ) | |
| LAWRENCE J. PAESANO, | ) | |
|    Defendant. | ) | |

MEMORANDUM OF OPINION

Before the Court is the unopposed motion for summary judgment of plaintiff, Citibank (South Dakota) N.A. (Citibank). At issue is whether the debt owed to Citibank is nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (C). For the reasons that follow, Citibank's motion for summary judgment is denied.

JURISDICTION

Determinations of dischargeability are core proceedings under 28 U.S.C. § 157 (b)(2)(I). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 12, 2005, debtor Lawrence J. Paesano filed a Chapter 7 petition. On February 13, 2006, Citibank filed this adversary proceeding seeking: (1) a determination that the debt owed to Citibank is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (C), and (2) a money judgment in the amount of $5,765.66, with interest at the contract rate from October 12, 2005.

In his answer, the debtor admits that $5,765.66 was charged to his Citibank credit card account during the sixty days prior to the bankruptcy. This includes $947.16 in cash advances, with the remainder for purchases of goods and services. The debtor stated that the cash advances were obtained "to help a friend who was unable to work due to an illness." The credit card statements indicate the dates and amounts spent but do not detail what was bought with each purchase. For example, the credit card statements show that the card was used for various transactions at merchants including Giant Eagle, CVS Pharmacy, Sheetz, and Hollywood Video. Plaintiff's complaint listed three specific charges which plaintiff asserts were purchases of luxury goods or services: a $208.80 charge to Four Seasons Enterprise on September 19, 2005, a $716.54 charge to Value City on September 23, 2005, and a $475.90 charge to Priceless Kids on October 5, 2005. While the debtor admits to making these purchases, he denies that they

2

were luxury purchases. Nothing in the record indicates whether the balance of the charges were for luxury goods or services other than perhaps the names of the merchants and the amounts spent.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c), as made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving the court for summary judgment bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." *Jones v. Union County*, 296 F.3d 417, 423 (6th Cir. 2002). *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997); *see, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of

3

evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). In determining the existence or nonexistence of a material fact, a court will view the evidence in a light most favorable to the nonmoving party. *Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996).

Absent such evidence from the nonmoving party in a motion for summary judgment, the Court need not excavate the entire record to determine if any of the available evidence could be construed in such a light. *See In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001) (holding that the "trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact"); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir. 1993). "[S]ummary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56.

## DISCUSSION

Section 523(a) of the Bankruptcy Code provides in pertinent part:[1]

---

[1] This bankruptcy case was filed prior to October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23 (BAPCPA). Therefore, all references to the Bankruptcy Code are to the Bankruptcy Code as it existed prior to the effective date of BAPCPA.

4

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt —
>
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by —
>>
>>> (A) false pretenses, a false representation, or actual fraud . . . ;
>>>
>>> . . . .
>>>
>>> (C) For the purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $1,150 for "luxury goods or services" incurred by an individual debtor on or within 60 days before the order for relief under this title, or cash advances aggregating more than $1,150 that are extensions of consumer credit under an open ended credit plan obtained by an individual debtor on or within 60 days before the order for relief under this title, are presumed to be nondischargeable.

Absent the special presumption that arises under § 523(a)(2)(C), a debt is excepted from discharge under § 523(a)(2)(A) when the creditor proves:

> (1) the debtor obtained money through a material misrepresentation, that at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss.

*Rembert v. AT&T Universal Card Services, Inc.* (*In re Rembert*), 141 F.3d 277, 280-81 (6th Cir. 1998). The intent to deceive or defraud the creditor is "measured by a subjective standard." *Id.* at 281. While the "use of a credit card represents

either an actual or implied intent to repay the debt incurred," the mere inability to pay the debt at the time it is incurred does not establish fraud. *Id.* The creditor must show that the debtor "maliciously and in bad faith incurred credit card debt with the intention of petitioning for bankruptcy and avoiding the debt." *Id.*

## 11 U.S.C. § 523(a)(2)(C)

Section 523(a)(2)(C) "creates a presumption of fraud in favor of the creditor and is to be used to prevent 'the perceived practice of loading up by certain debtors.' " *Lorain County Bank v. Triplett (In re Triplett)*, 139 B.R. 687, 689-90 (Bankr. N.D. Ohio 1992).

Subparagraph (C) creates two separate ways for a creditor to establish the presumption of nondischargeability: (1) establish that the debtor incurred more than $1,150 in consumer debts to one creditor in the sixty days before bankruptcy for luxury goods; or (2) establish that the debtor obtained more than $1,150 in cash advances in the sixty days before bankruptcy. While luxury purchases may be aggregated to reach the $1,150 and cash advances may be aggregated as well, the plain meaning of subparagraph (C) does not provide for aggregation of cash advances with luxury purchases to reach the $1,150 threshold.

A consumer debt, as used in subparagraph (C), "means debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C.

6

§ 101(8). " '[L]uxury goods or services' do not include goods or services reasonably acquired for the support or maintenance of the debtor." 11 U.S.C. § 523(a)(2)(C). While there is no precise definition of what constitutes "luxury goods or services," some courts analyzing this term have found a debt is for a luxury good or service when it is not reasonably acquired for the support or maintenance of the debtor. *See FCC National Bank v. Orecchio (In re Orecchio)*, 109 B.R. 285 (Bankr. S.D. Ohio 1989) (finding the purchase of audio tapes luxury goods because they were not necessary for the debtor's support); *see also Mirage-Casino Hotel v. Simpson (In re Simpson)*, 319 B.R. 256, 262 (Bankr. M.D. Fla. 2003) (excepting gambling debts from discharge as a luxury good because gaming chips were not acquired for the maintenance or support of the debtor). Other courts have taken a narrower view and hold that luxury goods are "extravagant, indulgent, or nonessential" goods. *Sears, Roebuck and Co. v. Hernandez (In re Hernandez)*, 208 B.R. 872, 881 (Bankr. W.D. Texas 1997). Courts following this second view do not find unnecessary but mundane or ordinary purchases to be luxury goods. *See Universal Bank, N.A. v. Kuntz (In re Kuntz)*, 249 B.R. 699 (Bankr. N.D. Texas 2000); *Norwest Bank Iowa, N.A. v. Larson (In re Larson)* 136 B.R. 540 (Bankr. N.D. 1992); *See also Capital One Bank v. Zeman (In re Zeman)*, 347 B.R. 28 (Bankr. W.D. Tex. 2006) (holding that purchases at fast food

restaurants, discount stores, and movie theaters were not luxury goods). Other courts have found luxury goods to be those which add to the debtor's pleasure or comfort. *See Boyd Gaming Corp. v. Hall (In re Hall)*, 228 B.R. 483, 488-89 (Bankr. M.D. Ga. 1998) (holding gambling debts were not luxuries when the debtor incurred the debts in an act of desperation and not for pleasure). These courts hold that "luxury is inherently relative" and therefore the determination depends on each debtor's particular situation. *Notre Dame Federal Credit Union v. Tondreau (In re Tondreau)*, 117 B.R. 397, 401 (Bankr. N.D. Ind. 1990); *See also Colonial National Bank v. Carrier (In re Carrier)*, 181 B.R. 742, 748 (Bankr. S.D.N.Y. 1995) (considering whether the items purchased were luxury based on the deviation from the debtor's normal spending); *Montgomery Ward and Co., Inc. v. Blackburn (In re Blackburn)*, 68 B.R. 870, 874 (stating luxury "necessarily depends on the debtor's particular situation, luxury is inherently relative."). Regardless of the view taken, the courts require the creditor to establish that the purchases were in fact luxury purchases. *AT&T Universal Card Servs. Corp. v. Acker (In re Acker)*, 207 B.R. 12, 18 (Bankr. M.D. Fla. 1997).

In the present adversary proceeding, Citibank has failed to establish the presumption of nondischargeability of the $5,765.66 in credit card charges through either option available under § 523(a)(2)(C). First, Citibank has failed to
8

establish the presumption of nondischargeability for cash advances taken in the sixty days preceding the bankruptcy because the cash advances at issue do not total more than $1,150. Second, Citibank has failed to establish the presumption of nondischargeability for luxury purchases made within the sixty days preceding the bankruptcy because Citibank has provided no evidence that the charges incurred were for luxury goods or services. In the debtor's answers to interrogatories, he stated that the *cash advances* were taken "to help a friend who was unable to work due to an illness." Citibank has relied upon this response to support its contention that the charges were luxury goods; however, this answer relates to the cash advances which do not aggregate to the statutory requirement for luxury purchases. Citibank has offered no evidence detailing what was purchased with the various charges incurred during the sixty days prior to the debtor's bankruptcy petition. All that has been provided are the amounts purchased and the names and locations of the merchants. While under some circumstances such information by itself may be enough to establish the presumption, for example a $10,000 purchase from Tiffany & Co., such is not the situation here, even for the three purchases singled out in the complaint as purchases for luxury goods: a $208.80 charge to Four Seasons Enterprise on September 19, 2005, a $716.54 charge to Value City on September 23, 2005, and a

$475.90 charge to Priceless Kids on October 5, 2005. Therefore, the Court is unable to determine whether the purchases at issue here were for luxury goods or services under any of the approaches courts have used for defining luxury goods or services under 11 U.S.C. § 523(a)(2)(C).

## CONCLUSION

For the reasons stated above, Citibank's motion for summary judgment is denied.

IT IS SO ORDERED.

_____
Arthur I. Harris
United States Bankruptcy Judge